

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed December 18, 2019

**United States Bankruptcy Judge**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ROY PAT RUCKER, | § | CASE NO. 19-20072-rlj7 |
| | § | |
| Debtor. | § | |

## MEMORANDUM OPINION

Vista Bank moves under 11 U.S.C. § 707(b) for dismissal or conversion (to chapter 13) of this chapter 7 case. Roy Rucker, the debtor, opposes the motion. The Court conducted an evidentiary hearing on September 16, 2019, at which the debtor, Roy Rucker, and Vista Bank's loan officer, James Conwright, testified. The primary issue concerns whether certain debts classified as business debts are actually consumer debts and whether Rucker's debts, collectively, are *primarily* business or *primarily* consumer debts.

This is a core proceeding under 28 U.S.C. § 157(b); the Court has jurisdiction of this matter under 28 U.S.C. § 1334. Having considered the briefs and the arguments of counsel, as well as testimony and evidence offered by the parties, and for the reasons set forth below, the Court denies Vista Bank's motion to dismiss or convert the case.

I.

**Background**

Roy Rucker filed chapter 7 bankruptcy on March 8, 2019. On his petition, Rucker states that a majority of his debts are *business* debts. A debtor whose debts are primarily business-related is free to file a chapter 7 case and thus avoid being means tested for possible dismissal or conversion to a case under chapter 13. *See* 11 U.S.C. § 707(b). Vista Bank, Rucker's largest creditor, objects to the chapter 7 filing because, it argues, Rucker's debts are primarily *consumer* debts and, given his income, his case should either be converted to chapter 13 or dismissed for abuse under § 707(b).

A.

Rucker is a maintenance planner with BP America Production Company where he has worked for over 28 years. Rucker's bankruptcy schedules reflect total debts of $196,508.01. He lists three secured claims and several unsecured claims. Vista Bank is listed as a secured creditor. Vista Bank has a $68,962.89 claim that is secured by a sailboat, designated as a 1983 65-foot Irwin Ketch Charter Yacht. Rucker states on his schedules that this is a business debt and that he intends to surrender the boat back to the bank. The other two secured claims are held by Amarillo National Bank for $4,869.00 on a hot tub and Toyota Motor Credit for $36,685.00 on a 2018 Toyota Tundra, both undisputed as consumer debts. Rucker's schedules, as amended, reflect total unsecured debts of $85,991.12, which consist of two consumer credit cards, four "business" credit cards, student loans, and a lease claim.

B.

Rucker testified that he filed bankruptcy because of his failed business venture. In 2014, Rucker started a charter sailing business in the Caribbean. For this, Rucker found a boat—and some semblance of a business—to purchase for $375,000, the boat being the 1983 65-foot Irwin

Ketch Charter Yacht named Three Moons. Rucker had formed Sailing Three Moons, LLC, a Texas Limited Liability Company, in February 2014, for the purchase. Rucker withdrew $150,000 from his 401K retirement account and funded the remaining $225,000 through a commercial loan with Vista Bank. He purchased insurance on the boat and began operating his business later that year. Rucker testified that he intended the charter business to be a part-time job and perhaps develop into his full-time job after he received his captain's license.

Rucker testified that all was fine until September 20, 2017, when Hurricane Maria hit Puerto Rico where Three Moons was harbored. The boat suffered significant damage and was rendered inoperable.[1]

### C.

When Rucker obtained insurance for the year 2017 on Three Moons, he worked with an insurance agent in Florida. With his agent, Rucker elected to include coverage for "Named Windstorm" (hurricane) damage. Such coverage requires that the insured submit a hurricane plan to the insurance company for approval. Rucker completed a hurricane plan and submitted it to his insurance agent; the agent later told him that the plan had been approved.

Relying on the insurance agent's assurances, Rucker believed he had "Named Windstorm" damage coverage. Per his plan, Rucker moved Three Moons to Puerto Rico when Hurricane Maria began approaching the Caribbean. The "plan" did not work. After Hurricane Maria, he had the damage surveyed and submitted a claim to the insurance company for a little over $300,000. The claim was denied. Rucker learned that his hurricane plan had not been approved and thus the coverage extension was not included in Rucker's policy. Rucker explored

---

[1] Rucker has not received his captain's license and remains employed with BP America Production Company.

3

a possible action against the insurance agent, but, according to Rucker and his bankruptcy attorney, the effort became fruitless after the insurance agent filed bankruptcy in Florida.

**D.**

Vista Bank's counsel examined Rucker regarding his business and business expenses. Rucker credibly testified that over the three years the boat was in operation, he contracted for 15 charters. Rucker produced the charter agreements. The logbook documenting the charters, though, was destroyed in the hurricane. Rucker testified that the charters were also documented on his personal Google calendar that he tried to produce and was unable to because he could not "weed out people's birthdays and stuff like that."

When asked about other company records, Rucker explained that most of his business records were kept on board Three Moons and had also been destroyed in the hurricane. Rucker provided bank statements for the Three Moons bank account and years of monthly credit card statements for the credit cards claimed as business debts. When asked about specific charges, Rucker was able to provide a business purpose behind most charges. For a few, Rucker indicated that some of the charges on his business credit cards may have been personal. For example, Rucker paid a personal taxi fare in London with one of the business cards. Another time, after Hurricane Maria, he used a business card to pay a Hertz Enterprise rental charge that was also a personal expense. Rucker admitted that some charges on the Capital One business credit card may have been for personal expenses. The bank statements showed various deposits and expenses but none coming directly from Rucker's patrons. But Rucker testified that, most of the time, the payments for charters were deposited into his personal bank account and then transferred into the Three Moons business account. Vista Bank's counsel examined Rucker about Three Moons' employees and payments to the employees. Rucker stated that several

different people filled the three different positions needed for the cruises—a captain, a first mate, and a chef; sometimes Rucker served as first mate. None of the employees were paid out of the Three Moons bank account, however. Rucker explained that cruises were often booked through brokerage firms that paid the employees; other times, he paid the employees from his personal account.

Vista Bank asked Rucker how often he was on the boat. Rucker testified that when he was off work, he would travel to the Caribbean to check on the boat. Rucker's work schedule is not traditional; he said he works a full month and then has a month off. On his off months, other than during hurricane season, he lived on the boat. Rucker stated that he spent most of his own funds on living expenses while there. Vista Bank also questioned Rucker about fuel expenses for the boat. Rucker testified that they would fill-up the boat for the cruises and that the expenses were business related. When pushed to clarify, Rucker stated that when he was there on his own, the fuel expenses were usually made on the business credit cards and listed as business expenses, though he sometimes would pay for the fuel personally.

Three Moons, LLC has never filed a tax return in any country. And no income, expenses, or employee payments of Three Moons are reflected on Rucker's personal tax returns. But documentation of Three Moons' Franchise Tax Account Status, Certificate of Formation for Limited Liability Company from the Texas Secretary of State, Certificate of Filing of Three Moons, LLC, and an IRS notice of assignment of employer identification number were all submitted into evidence.

E.

James Conwright, the loan officer at Vista Bank that handled the loan to Three Moons, LLC, testified that though the loan was made to Three Moons, the decision to make the loan was

based on Rucker's income. Conwright said that when he made the loan, Rucker represented to him that the loan was for the purchase of a boat and a charter business; the loan was thus designated as a commercial loan. Rucker personally guaranteed the loan.

Conwright testified that the salvage value of Three Moons is not sufficient to cover the debt balance. He confirmed that Vista Bank had received payments on the loan after Hurricane Maria and was aware of the damage from the hurricane. For a time after the hurricane, Vista Bank agreed to reduce the payments from $4,300 a month to $1,500. The full loan balance came due in February of 2019. Vista Bank wanted the loan paid off and, in March 2019, made written demand on both Rucker and Three Moons, LLC for the balance due.

There is no dispute that Rucker's hot tub, car, and student loans, and two credit cards, are consumer debts. His undisputed consumer debts total $82,228.36, which is 42% of the total debt. The present dispute concerns the proper classification of Rucker's Vista Bank loan of $68,962.89 and four credit card balances listed as "business" debts on his schedules of $44,146.01.

## II.

A motion to dismiss or convert under § 707(b) requires that the court determine two issues. The court first decides whether the debtor's debts are primarily consumer in nature. If the court finds that the debts are primarily consumer, it then determines whether the totality of the circumstances demonstrate abuse by the debtor and potentially a bad faith filing. *In re McDowell*, No. 12-31231, 2013 WL 587312, at *1 (Bankr. S.D. Tex. Feb. 14, 2013).[2] If Vista Bank proves that Rucker's debts are primarily consumer debts, the analysis that follows is whether Rucker's case is an abusive filing.

---

[2] As part of the court's determination, abuse may be presumed, subject to rebuttal, under the mathematically-prescribed test of subsection (b)(2)(A) of § 707(b).

## A.

## Primarily Consumer Debt

Under § 707(b), a court "may dismiss a case filed by an individual debtor . . . whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions" of chapter 7. As such, § 707(b) only permits the dismissal of a case filed by an individual debtor whose debts are primarily consumer debts. *In re Booth*, 858 F.2d 1051, 1055 (5th Cir. 1988) ("Even if the filing of the petition is in fact a substantial abuse of the bankruptcy procedure, a case may not be dismissed under this provision unless this prerequisite is satisfied."). If the characterization of a debt (or debts) is challenged, the court first addresses whether such debt (or debts) is business or consumer. The court then determines whether the debts are *primarily* consumer or business in nature.

The Bankruptcy Code defines "consumer debt" as "debt incurred by an individual primarily for a personal, family, or household purpose." § 101(8). The test to determine if a debt is a business debt "is whether it was incurred with an eye toward profit." *In re Booth*, 858 F.2d at 1055. In evaluating whether a profit motive exists, the purpose for incurring the debt is determined at the time the debt was incurred, and any subsequent recharacterization of the debt is inconsequential. *In re Martin*, No. 12-38024, 2013 WL 5423954, at *6 (Bankr. S.D. Tex. Sept. 26, 2013). A court should determine the true purpose for incurring the debt in light of the entire transaction. *Riviere v. Banner Chevrolet, Inc.*, 184 F.3d 457, 462 (5th Cir. 1999).

The Code does not provide a standard or test for assessing if debts are "primarily" consumer or business based. But the Fifth Circuit has held that, in deciding if debts are primarily

7

consumer or business based, both the dollar amount and the relative number of claims attributable to each is important. *In re Booth*, 858 F.2d at 1055.[3]

The moving party bears the burden of proof to support a § 707(b) motion by a preponderance of the evidence. *In re Cherrett*, 523 B.R. 660, 668 (BAP 9th Cir. 2014); *In re Ferreira*, 549 B.R. 232, 237 (Bankr. E.D. Cal. 2016). This burden includes proving that the debtor has primarily consumer debts. *In re Martin*, 2013 WL 5423954, at *3. Once the movant makes a prima facie case, the debtor has the burden of persuasion that his debts are primarily business debts. *Palmer v. Laying*, 559 B.R. 746, 756 (D. Colo. 2016).

## B.

## Vista Bank Debt is a Business Debt

When a debt arises from a single transaction, the characterization of such debt likewise arises from the transaction. And a court may bifurcate a claim as partially consumer and partially business debt. Factors for determining the characterization of a debt, whether a singular classification or a dual classification, are the debtor's intent, ultimate use of the proceeds, and the nature of the entire transaction. *In re De Cunae*, No. 12-37424, 2013 WL 6389205, at *3 (Bankr. S.D. Tex. Dec. 6, 2013).

Vista Bank's debt is business debt. At the time the Vista Bank debt was incurred, the debt was intended for a business purpose. The bank's loan officer testified that approval of the loan was based on Rucker's income and not on the credit history of an operating business. That it considered Rucker's income in approving the loan does not change the nature of the debt,

---

[3] Courts within the Fifth Circuit have interpreted the language and standard from *In re Booth* differently. *Compare, e.g.*, *In re De Cunae*, No. 12-37424, 2013 WL 6389205, at *2 (Bankr. S.D. Tex. Dec. 6, 2013) ("The Fifth Circuit has suggested that 'primarily' means that the ratio of consumer debts to all debts is greater than fifty percent."), with *In re Martin*, 2013 WL 5423954, at *4 ("The *Booth* court also held that courts should evaluate not only the dollar amount, but also the relative number of consumer versus non-consumer debts.")

however. *See id*. Rucker sought the loan for the purpose of purchasing a sailboat and charter sailing business to run and, ideally, make a profit; the proceeds of the loan were used to purchase Three Moons. Vista Bank argues that the loan should be characterized as a consumer debt because the boat was used for personal purposes after the loan was made. But a secured loan (and debt) typically arises from a single transaction and is thus determined at the time it arises. *See In re Martin*, 2013 WL 5423954, at *6. When Rucker incurred this debt, he had formed an LLC for the business. He sought a business loan, presented a business plan to Vista Bank, and Vista Bank extended a commercial loan to Rucker for the purchase of an existing business and boat. This debt was incurred "with an eye towards profit." The $68,962.89 debt to Vista Bank is a business debt.

## C.

## Credit Card Debt is Business Debt

Vista Bank argues that most, if not all, of Rucker's credit card debt is consumer debt. This argument fails. Rucker reflects that four credit card balances are business debts. Only one of the credit cards listed in Rucker's schedules is a joint account with Three Moons, while the other three are only in Rucker's name.

Unlike most secured debts, the nature of credit card debt—as business or consumer— may not be determinable at a single point in time. Few courts have analyzed the contested characterization of credit card debt. But the basic principles of debt characterization for secured debt likewise apply to unsecured credit card debt. A credit card used for personal living expenses creates consumer debt, *In re Wegner*, 91 B.R. 854, 857 (Bankr. D. Minn. 1988); credit card debt that relates "to the business [and was] incurred with a profit motive" is a business debt. *In re Meyer*, 296 B.R. 849, 865 (Bankr. N.D. Ala. 2003). Business debts may arise from

personal credit cards. *See, e.g.*, *id.* (finding some charges on a personal credit card were business debts where the debtor testified that they were attributable to a business venture and credit card statements corroborate that purpose); *In re Shinn*, No. 04-10038C-7G, 2003 WL 23784151 (Bankr. M.D.N.C. Sept. 14, 2003). Like a single debt transaction, credit-card-debt characterization may be divided when specific amounts are proven. *In re Hall*, 258 B.R. 45, 51 (Bankr. M.D. Fla. 2001). But "[w]here debt has more than one purpose or is the result of a commingling of personal and business expenses, courts look to the predominant purpose of the debt to categorize it as primarily business or consumer," where more information is not established. *In re Cromwell*, No. 14-03707-5-SWH, 2015 WL 1119711, at *4 (Bankr. E.D.N.C. Mar. 6, 2015).

### 1.

In *In re Hall*, the debtor filed chapter 7 bankruptcy indicating that her debts were primarily business debts from a failed business. 258 B.R. at 46–47. A large portion of the debtor's claimed business debts came from personal credit cards, which she had used to start-up and operate the business. The United States Trustee moved to dismiss the case under § 707(b), asserting that the case involved primarily consumer debts and that the debtor's credit card debts were consumer. After a fact-specific inquiry, the court concluded that while the trustee had spent much time examining the debtor on specific transactions associated with the credit cards and established that there were some consumer purchases on the accounts claimed as business debts, "the trustee failed to establish by a preponderance of the evidence the exact amount by which the debt alleged to be business debt is consumer debt." *Id.* at 51. Without more, the court

was not able to determine that the majority of the credit card debt was consumer in nature and therefore adopted the debtor's assertion that the credit cards were business debt.[4]

Like the trustee in *In re Hall*, Vista Bank's counsel spent considerable time going through Rucker's credit card transactions. During this examination, Rucker stated that a few charges on the cards were for personal charges. For example, Rucker stated that a $60 charge for a Hertz Enterprise rental on one of the business cards was probably personal. He also admitted that the Capital One business credit card has some personal charges. Despite this, Vista Bank did not prove by the preponderance of the evidence that either one of the debt balances on these cards, or the other two credit cards, were primarily consumer in nature. Vista Bank also failed to prove the amount of personal charges on these cards.

Rucker credibly testified to the necessity of the expenses on the credit cards for maintaining his business. The disputed credit card statements show charges for fuel, docking fees, boat repairs, boat insurance, and charter-specific provisions, such as food and recreational fees that were included in the charter packages. Vista Bank did not rebut these explanations or rebut the business necessity of these charges for a chartering business. The credit card debts claimed as business debts show expenses that were "motivated for ongoing business requirements." *In re Cherrett*, 523 B.R. at 669. The disputed credit cards, in the aggregate, are properly classified as business debts.

**2.**

Vista Bank attempts to reclassify these credit card debts as consumer by attacking the legitimacy of Rucker's business, arguing that the boat was Rucker's hobby and that renting out the boat a few times did not turn his hobby into a business. The bank argues that the charges

---

[4] Despite the determination that the credit card debt claimed as business was considered business debt, the court found that a majority of the debtor's debt was consumer and dismissed the case for abuse. *Id*. at 51–53.

associated with Three Moons were consumer in nature because Rucker was using the boat for personal purposes and the expenses on the boat were for himself and not for a business operation. Vista Bank supports this theory by comparing the amount of time Rucker spent on the boat in comparison to the time the boat was chartered and by Rucker's lack of business records.

      The bank submits that Three Moons was chartered 15 times over a period of four years, for a total of 15 weeks, and that Rucker spent between two to three months a year on the boat over the same period, for a total of about 52 weeks. (Rucker purchased the boat in October 2014, and Hurricane Maria hit in September 2017, which rendered the boat unusable—so, really, three years.) Sometimes he was on the boat as a first mate on these charters, more times he was there when he was off-work to check on the boat.[5] Vista Bank also tries to characterize Rucker's presence on the boat as purely personal and not part of maintaining a business asset. Rucker testified that when the boat was not chartered, he sometimes paid someone $100 a day to stay on the boat. Vista Bank never asked if this was necessary to maintain the business. Because of the need to have someone on the boat, Rucker's presence on the boat does not indicate that it was not to maintain the business. The time Rucker spent on the boat does not prove by the preponderance of the evidence that the use and therefore maintenance expense of the boat was primarily consumer.

      Further, Rucker testified that he used Three Moons personally when he moved the boat from Saint Thomas to Puerto Rico—how often or for how long was not made clear. Rucker also stated that he sometimes paid for fuel on his own, suggesting that personal fuel was not necessarily on the business credit cards. Where the debt may be commingled, and specific

---

[5] Rucker generally spent his own money for living expenses while there.

amounts of business versus personal expenses have not been proven, the predominate purpose of the debt controls the characterization of the credit card balance.

Finally, Vista Bank urges the Court to find that Rucker *never* had a business purpose for the boat. A lack of business records does not, however, necessarily prove that there was not a business. Rucker is not a sophisticated businessman—he is the sole member of Three Moons, LLC. He does have documents that support a business, specifically the LLC registration, IRS notice, and the 15 charter agreements. While the lack of tax returns or tax documentation on Three Moons is troubling, it more likely reflects a potential IRS problem for Rucker than an indication that he had no charter business. Vista Bank has not proven by a preponderance of the evidence that Three Moons, LLC was not a business and was not an operating business; and the four business credit cards cannot, on the evidence, be classified as consumer debts.

Vista Bank has failed to provide sufficient evidence to suggest that Rucker's charter business was not legitimate or that the majority of his expenses on the credit cards were not made "with an eye towards profit." Vista Bank proposes that Rucker's inability to secure more charters delegitimizes the business in its entirety, disqualifying his business debt as business debt. This theory is ill-founded because "profit *motive* does not mean profit *realized*. Motive necessarily looks to the reasons behind a course of action, it does not suggest that the course of action need come to fruition." *Palmer*, 559 B.R. at 754 (emphasis in original). The $44,146.01 of business credit card debt is properly characterized as business debt.

### D.

Rucker's debts are primarily business debts. The Fifth Circuit considers both amount and number of claims to determine if a case is primarily consumer or business in nature. *In re Booth*, 858 F.2d at 1055. Here, the disputed $68,962.89 and $44,146.01 are properly characterized as

13

business debts. Additionally, Rucker claims an additional $1,170.75 debt owed to The Yacht Club in Puerto Rico as a business debt resulting from a "broken" lease where Three Moons was docked. Vista Bank did not address this claim, and it is presumed to be a business debt. Together, these business debts make up about 58% of the total debt. These business debts are comprised of six different claims. The uncontested consumer debts are made-up of five claims. Rucker's business debts are greater than his consumer debts both in amount and in number of claims. As Rucker's chapter 7 case consists primarily of business debts, Vista Bank's motion under § 707(b) fails; the Court thus need not address whether the case should be converted or dismissed for abuse.

### III.

### Conclusion

A court may only consider dismissal of a chapter 7 case under § 707(b) if the case involves primarily consumer debts. Where a debtor represents that his debts are primarily business debts, a movant under § 707(b) bears the burden of proof that the debtor's debts are primarily consumer in nature. Vista Bank contests the characterization of two debts: the debt from its secured commercial loan to Rucker and Rucker's business credit card debt. It failed, however, to establish that, at the time Rucker took-out the commercial loan to purchase Three Moons, the loan was primarily personal. Rucker's debt to Vista Bank is properly characterized as a business debt. And the preponderance of the evidence does not establish that a majority of Rucker's credit card debts resulted from personal (or consumer) expenses. Rucker's consumer debts account for 42% of his total debts. Rucker's debts are primarily business debts, and Vista Bank's motion to dismiss or convert under § 707(b) is denied.

### End of Memorandum Opinion ###